## UNITED STATES v. INFUSINO.

### No. 7973.

Circuit Court of Appeals, Seventh Circuit.

July 23, 1942.

Rehearing Denied Aug. 5, 1942.

Edward J. Hess, of Chicago, Ill., for appellant.

B. J. Husting, U. S. Atty., and Carl R. Becker, Asst. U. S. Atty., both of Milwaukee, Wis., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The defendant-appellant, Frank Infusino, was convicted with twenty-two other persons in seventeen substantive counts and two conspiracy counts, all of which grew

out of the illicit manufacture and handling of alcohol. All of the defendants were charged with the offense set forth in each and every count of the indictment. Four of the defendants pleaded guilty, and the case went to trial against the remaining nineteen defendants on each and every count of the indictment. At the conclusion of the evidence by the government, the court on its own motion dismissed all counts as to the defendant Infusino except 2, 6, 12, 4, 8, 18 and 19. On these counts the jury found the defendant Infusino guilty, and the court sentenced him to six months' imprisonment on each of counts 2, 6 and 12, and nine months' on each of counts 4 and 8, to run consecutively, aggregating three years; and two years' imprisonment and two thousand dollars fine on count 18 and two years' on count 19, to run concurrently with count 18, but both to run consecutively with the other counts, making a total of five years' imprisonment.

No motion for a directed verdict or for a new trial or in arrest of judgment or any other kind of motion was presented to the trial court on behalf of this defendant.

From that kind of record this appeal is taken. Two questions are attempted to be presented. First, it is urged that it was error to submit to one jury distinctive offenses charged against different defendants, even though such charges were in different counts; and second, that the evidence is not sufficient to support the verdict. We shall consider these points in this order.

Each and every defendant was charged with having committed each and every offense alleged in the indictment. As far as this record reveals, no challenge was ever made at the trial as to the procedure followed. The trial judge had no way of knowing what counts the evidence would sustain. The trial court was zealous for the protection of the rights of the defendant and, as we have indicated, dismissed twelve counts as to this defendant. If the defendant Infusino had any such knowledge or information as to which counts there might be no evidence implicating him, he did nothing about it in the trial court. If at any stage before or during the trial the defendant Infusino felt that he was improperly placed upon trial with other defendants on counts of an indictment on which he felt he was not guilty, it was his duty to challenge this procedure before the trial court as the opportunity to do so was presented. This the defendant did not do.

Why, we do not know. He might have been willing to take his chances with the jury and have hoped to gain through it an acquittal. Certainly he ought not now be heard to complain that the court permitted him to go to trial without objection. It was the duty of the defendant to challenge the court's attention to the procedure if it was wrong, and procure the court's ruling thereon before he could complain of error. Until that time, the court had had no chance to commit error. The objection cannot be presented here for the first time. Logan v. United States, 144 U.S. 263, 296, 12 S.Ct. 617, 36 L.Ed. 429; Bucklin v. United States (No. 2), 159 U.S. 682, 685, 16 S.Ct. 182, 40 L.Ed. 305; Haynes v. United States, 8 Cir., 101 F. 817; Goldberg v. United States, 5 Cir., 280 F. 89; Hostetter v. United States, 8 Cir., 16 F.2d 921.

Secondly, it is contended that the evidence is not sufficient to support the verdict. No challenge as to the sufficiency of the evidence was made in the trial court by defendant Infusino by any means whatsoever. Under such circumstances, the question may not be raised here.

"The sufficiency of the testimony to support the verdict was not raised at the conclusion of all the testimony in the court below, and for that reason the question is not properly before us for review. Under such circumstances courts will only look into the record far enough to see that there has been no miscarriage of justice, or that there is some testimony tending to support the verdict." Marco v. United States, 9 Cir., 26 F.2d 315, 316. See also Tincher v. United States, 4 Cir., 11 F.2d 18; Ng Sing v. United States, 9 Cir., 8 F.2d 919; Robins v. United States, 8 Cir., 262 F. 126.

If in the exercise of our discretion we were disposed to examine the record as to whether or not there was any testimony tending to support the verdict, we would have to look to the record to see if there was a bill of exceptions bringing the evidence into the record. Rule 9 promulgated by the Supreme Court governing criminal procedure, 18 U.S.C.A. following section 688, provides: "Bill of Exceptions. In cases other than those described in Rule 8, the appellant, within thirty (30) days after the taking of the appeal, or within such further time as within said period of thirty days may be fixed by the trial judge, shall procure to be settled, and shall file with the clerk of the court in which the case was tried, a bill of exceptions setting forth the proceedings upon which the appellant wish-

es to rely in addition to those shown by the clerk's record as described in Rule 8. Within the same time, the appellant shall file with the clerk of the trial court an assignment of the errors of which appellant complains. The bill of exceptions shall be settled by the trial judge as promptly as possible, and he shall give no extension of time that is not required in the interest of justice."

An examination of the record reveals that judgment was entered March 7, 1942. Notice of appeal was filed March 10, 1942. On March 11, 1942 the trial court signed an order fixing April 9, 1942 as the time for filing the bill of exceptions. This date coincided exactly with the expiration of thirty days from the date of the appeal, so the court's order did not really extend the time within which to file the bill of exceptions. The rule and the court's order both fixed April 9, 1942 as the date for the filing of the bill of exceptions.

The record before us shows the following entry:

"Copy of this proposed bill of exceptions received.

"Carl R. Becker,
"Asst. U. S. Atty.

"Endorsed: * * * Bill of Exceptions (Cert. of Evidence). Lodged April 9, 1942. B. H. Westfahl, Clerk. Filed May 11, 1942. B. H. Westfahl, Clerk."

The judge's certificate in the record at the conclusion of the purported bill of exceptions shows that it was settled and signed on May 11, 1942, the day on which the purported bill of exceptions was filed. A reading of the rule will disclose that the bill must be settled, that is, authenticated by the judge's signature, before it can be filed. The transcript does not become a part of the record as a bill of exceptions until the court has settled or authenticated it and the same is filed within the proper time. Lodging the same with the clerk is not a filing, especially before the transcript has been settled and authenticated. Sanford v. United States, 69 App.D.C. 44, 98 F.2d 325. The bill must be filed within the time fixed by Rule 9 or within such an extension of time as the court may have properly granted. In the case at bar we find that the bill was not filed until a month and two days after the time fixed by Rule 9 and the court's order. Therefore, the bill of exceptions is not in the record. Miceli v. United States, 7 Cir., 87 F.2d 472; Trant v. United States, 7 Cir., 88 F.2d 475;

Dreher v. United States, 9 Cir., 92 F.2d 859; See, also, 129 A.L.R. 733, note.

This court is therefore presented with the proposition first: that no question is presented on the sufficiency of the evidence because no challenge thereto was made in the trial court, and whether we look at the evidence at all is within our discretion and is for the limited purpose of determining whether there is any testimony to support the verdicts. If we decide to exercise our discretion to look at the evidence, we discover the evidence is not in the record because the bill of exceptions was not settled and filed in time. We think it is within our discretion to extend the time for filing the bill to embrace the period up to the time it appears from the record it had been settled and filed, to wit, May 11, 1942. Sanford v. United States, 69 App.D.C. 44, 98 F.2d 325. We find nothing in this case to appeal to the court's discretion, first, to consider the evidence at all in the absence of the question having been raised below, and then again exercising our discretion to perfect the record so as to get the evidence properly before us for consideration. There is nothing in the record to excuse the failure to raise and preserve any questions in the trial court, nor is it apparent why the bill of exceptions could not have been settled and filed on the date the transcript was lodged with the clerk, which was the date fixed for its filing, or an extension of time obtained from this court.

In the state of this record, we would be justified in refusing to consider the evidence attempted to be brought before us by the purported bill of exceptions. Notwithstanding the failure of defendant to present a proper record, we have examined the transcript of the evidence and we find there is an abundance of evidence to support the conviction on the conspiracy counts and there is some evidence to support the conviction on each of the other counts.

The judgment is affirmed.

KERNER, Circuit Judge (concurring).

I concur with Judge MINTON in the result. I think the case should be considered as though the evidence were in the record.

The second count of the indictment charged the defendant with the illegal possession of a still, the sixth count with carrying on the business of a distiller without giving bond as required by law, and the twelfth count with the illegal possession of

282 gallons of alcohol, the containers of which did not have revenue stamps affixed thereto. The date was August 22, 1940, and the situs was upon the Yanke farm in Walworth County, Wisconsin.

The fourth count of the indictment charged the defendant with the illegal possession of a still, and the eighth count with carrying on the business of a distiller without giving bond as required by law. The date was August 6, 1941, and the situs was upon the Krupenski farm in Kenosha County, Wisconsin.

The pertinent testimony tended to prove that from about October 1, 1939, up to August 22, 1940, the defendants, Papavasilius, Caruso, Cucunato, Gottlieb, and Roy, Arthur and Emil Richio, operated an unregistered still on the Yanke farm for the purpose of distilling alcohol, and that during this period, Infusino associated with and was frequently seen in the company of the above named men.

During the evening of August 22, 1940, government agents seized the still and 282 gallons of non-taxpaid alcohol. Shortly after the seizure, a Plymouth sedan drove into the Yanke farm, and the occupants, Cucunato and Gottlieb, were placed under arrest. For the purpose of determining if any other individual desired to contact this car, Huntley, a government agent, drove it from the Yanke farm, followed by other officers in a Government automobile. When Huntley reached a point 300 feet from the Yanke driveway, he saw the lights of a Ford automobile parked off the road, and as he approached the Ford, it pulled out onto the highway and proceeded ahead of the Plymouth. The Ford was driven by Infusino, and when some distance from the Yanke farm, it stopped. Emil Richio alighted from the Ford, approached the Plymouth, and there Huntley informed Richio he was under arrest. Richio, however, fled to the woods, followed by Huntley. In the meantime, Infusino drove away in the Ford. Infusino admitted driving the Ford, but denied he was present at the time in question, and claimed an alibi.

One Koch testified that he was vice-president of a hotel company operating the Lorraine Hotel, and produced cards showing registration at the hotel on August 22, 1940, from noon until midnight, one of which carried the name of Frank Infusino, indicating that the registrant rented Room 218, for which the hotel charged $1.50. He did not, however, testify that Infusino occupied the room shown on the card or that he visited the hotel on August 22 or at any other time.

The defendant testified that he left Kenosha at 6:40 p. m. and arrived at Chicago at 9 p. m.; that he registered at the Lorraine Hotel, signed the registration card, and retained the room for two nights; and that he returned to Kenosha on the evening of August 24.

On rebuttal the government recalled Koch and he produced 31 registration cards, bearing numbers 56818 to 56850, with number 56823 missing. Number 56834 bears the name of the defendant. The auditor of the Hotel testified that his cash sheets for August 22 and 23 reveal the entire income of the hotel for that day and indicate that on August 22, 1940, Room 218 was occupied by one Small, for which he paid $1.50; that Small was entitled to use that room until 4 p. m. on August 23; that Room 218 was vacant on August 23; and that the cash sheets for August 22 and 23 do not reveal the name of Frank Infusino. The registration cards produced did not contain a registration card for Small.

A recognized authority on questioned documents testified that he had compared card numbered 56834 with the remaining 30 cards produced; that card 56834 was not of the same stock as the other cards; that the number "56834" printed thereon did not fall in the same relative position as the corresponding number on any of the other cards; that 30 of the cards had the printer's offsets on their backs, acquired through piling when wet, but that 56834 had no such offset; that the ink on 56834 was different and the numeral "8" was damaged.

A printer of 22 years' experience testified that "it would not be possible in a continuous run to change the position of the numerals, the figures would have to appear in the same place where the others are," and it was his opinion that "cards 56833, 56834 and 56835 were not made in the same run of printing."

Krupenski farm. The record discloses that one Tarrallo employed investigator Irzyk, and that on July 18, 1941, Tarrallo directed him to drive a Dodge car from Chicago to Fossland's Gas Station near the Wisconsin-Illinois line. There Irzyk met Tarrallo, and sometime later, defendants Nudi, Capponi, and Emil and Arthur Richio drove up to the gas station in a Plymouth car. Tarrallo directed Irzyk to give the key to the Dodge to Capponi and Nudi, and

told Capponi he had to load 60 5-gallon cans of alcohol. Capponi and Nudi drove away in the Dodge, Tarrallo and Emil and Arthur Richio drove north in the Plymouth, and Irzyk remained at the gas station. Later, Tarrallo returned with the Dodge, loaded with 42 5-gallon cans of alcohol which bore no revenue stamps, and directed Irzyk to drive the Dodge to Chicago.

On July 23, 1941, Irzyk drove Tarrallo to Cy's Gas Station near the Wisconsin-Illinois line. There they were joined by Infusino and Emil Richio. Tarrallo, Richio and Infusino engaged in a conversation, in which, in the presence of Infusino, Irzyk told Tarrallo that he (Irzyk) was worried about being there, to which Tarrallo replied: "Don't worry. We are going to work for the right people. These people up here are right people, and Frank is a pretty big boss." Emil Richio and Irzyk then drove in Tarrallo's car to a garage in Kenosha, followed by Infusino and Tarrallo in Infusino's car. At the garage, Tarrallo, in the presence of Infusino, said to Irzyk: "How do you like the crate * * * Frank has given me to replace the one the Feds knocked off on the Lake Geneva job?"

On July 27, 1941, Irzyk loaded chunks of broken concrete, 1½ to 2 feet long, a foot wide, and weighing up to 100 pounds, into the Dodge and drove it, at Tarrallo's direction, to a place outside Kenosha where he met Infusino, Tarrallo, Emil, Arthur and Roy Richio seated in Infusino's car. Irzyk, having been directed by Tarrallo in the hearing of Infusino to give the keys to the Dodge car to Roy, gave them to him, and Roy drove away in the Dodge. After a while Roy Richio returned, and in the presence of Infusino said to Tarrallo: "I could only get 26-28 * * * we are having trouble at the pot. Can't get the proof." Tarrallo got angry and started to argue with Roy, whereupon Infusino said: "If he has got trouble, he has got trouble." Upon Tarrallo's instructions, Irzyk then drove the Dodge car to Chicago. It was filled with cans of non-taxpaid alcohol, and the concrete had been removed.

On July 29, 1941, government agents found a tile discharging mash into an open ditch and traced the tile across the field into the Krupenski farm. They entered the farm on August 6 and found a 700-gallon dismantled still in the barn, some mash in a receptacle, and chunks of broken concrete of the size and description testified to by Irzyk, but no sign, Registered Distillery.

On August 6, after the still had been seized, Tarrallo tried, without success, on four occasions to reach Infusino by telephone, and cruised the park in Kenosha, the usual meeting place for Tarrallo and Infusino, looking for Infusino's car. August 7, the Government agents, while approaching the Covelli Gas Station in Kenosha, saw Infusino in his car, talking to Arthur Richio; as the officers approached, Richio ran away and Infusino drove off at a high speed. Infusino denied he knew or had ever seen Irzyk or Tarrallo.

Whether the evidence was sufficient to establish the guilt of Infusino, or whether it was equally consistent with innocence or guilt, was a matter for the jury. The jury had the right to draw inferences from the facts established, Saunders v. United States, 6 Cir., 260 F. 386, and United States v. Mann, 7 Cir., 108 F.2d 354, and to say whether Infusino aided and abetted the other defendants. It is not necessary that one who aids and abets the commission of a crime be present when the crime is committed, Colbeck v. United States, 7 Cir., 10 F.2d 401, and where several acts constitute together one crime, if each is separately performed by a different individual in the absence of the rest, all are principals as to the whole. Alexander v. United States, 8 Cir., 95 F.2d 873. The jury believed the Government witnesses, and the direct and circumstantial evidence sufficiently supports the verdict of the jury.

MAJOR, Circuit Judge (dissenting in part, concurring in part).

A careful study of the record in this case compels me to dissent from what is concluded both by Judge MINTON and Judge KERNER as to Counts 2, 4, 6, 8 and 12 (the substantive counts). I agree that the judgment should be affirmed as to Counts 18 and 19 (the conspiracy counts).

Judge MINTON apparently favors affirmance upon two grounds, (1) that no motion for a directed verdict was made on behalf of the defendant, and (2) that the bill of exceptions was not filed in compliance with the rules and is, therefore, not properly in the record. As does Judge KERNER, I do not agree that the judgment should be affirmed upon such grounds. Ordinarily, of course, the insufficiency of the evidence should be tested by a motion for a directed verdict so that the court may have such insufficiency called to its attention. True, the record discloses no such motion

on behalf of the instant defendant, but there was such a motion on behalf of other defendants. The court apparently, after a careful and deliberate consideration of the evidence as to the instant defendant and all others, on all charges of the indictment, passed upon the sufficiency of the evidence and, in so doing, decided as to the instant defendant that it was insufficient as to all counts except the seven counts on which he was convicted and which are now before us. As to these counts, the court decided that the evidence was sufficient to go to the jury. Under these circumstances, no purpose could have been served by a formal motion. The court acted as though such a motion was before it and there is no room for the thought that its ruling would have been different if the formal motion had been made.

As to the bill of exceptions, Judge MINTON overlooks the Certificate of the District Judge, dated May 11, 1942, that it was duly proposed and presented to the court "within the time allowed by law, and by the rules and order of this court, after due notice to the United States attorney," and "is hereby made a part of the record in this case." True, as pointed out by Judge MINTON, the bill of exceptions, so far as the record discloses, was not filed in compliance with the rule. I think, however, there is a presumption which attaches to the validity of the court's Certificate which the record does not overcome. In view of such Certificate, it is probable that an order was entered extending the time for filing the bill of exceptions, which the record does not disclose. This view is strengthened by the fact that the Government raises no question, either in its printed brief or in oral argument, concerning this point.

It is conceded, however, that neither of these questions affects our authority to consider the appeal on its merits, but it is said there is nothing which will justify the exercise of our discretion to so do. It is my view, however, that inasmuch as the case has been presented by both sides on the merits, it should be disposed of on that basis. Furthermore, the record presents a situation which calls for the exercise of our discretion in favor of review. Judge MINTON aptly points out the gross incompetence attributable to defendant's counsel. In fact, it is so glaring that it is a dubious question as to whether the defendant could have had a fair trial. (This is no reflection on defendant's present counsel as he did not participate in the trial below.) The situation, no doubt, was recognized by the trial court when, at the conclusion of the Government's case, without formal motion, he ruled upon the sufficiency of the evidence. It is still the rule, so far as I am aware, that every person accused of crime, whether he be saint or sinner, is entitled to a fair trial upon the precise charge contained in the indictment. Considering the seriousness of the charge in connection with the fact that apparently no serious effort was made by counsel to protect defendant's rights, I think this court should squarely meet the challenge to the sufficiency of the evidence.

This brings me to Judge KERNER'S concurring opinion, in which he has fairly stated the evidence most favorable to the Government upon which it relies to sustain a conviction as to the substantive offenses. Just how and in what manner, however, this evidence is proof of the charges, is not pointed out. I need not refer to the propositions of law or the authorities cited further than to state they are inapplicable to the instant situation. It would serve no good purpose to analyze the proof as related by Judge KERNER. Such evidence speaks for itself, and while relevant to the conspiracy counts, is wholly lacking in probative value as to the counts now under consideration.

As to the offenses charged in connection with the Yanke farm, two circumstances only are relied upon—(1) that in connection with the presence of the defendant upon a public highway, and (2) the alleged false alibi. It may be of some importance to note that the raid and seizure at the Yanke farm occurred at 4 o'clock P. M., and that it was four hours later when the Plymouth Sedan entered those premises. It was some time subsequent (just how long is not disclosed by the record) that defendant was seen upon the public highway under the circumstances related. Assuming that such circumstances were suspicious, as I think they were, there isn't the slightest relevancy between them and the charge of possession of an unregistered still, the carrying on of the business of a distiller without bond, or the possession of 282 gallons of alcohol in containers without Revenue stamps affixed thereto. His presence on the highway was just as consistent with any number of purposes, and even more so, than it was with these three separate and distinct offenses, or any one of them. In its brief the Government explains his presence upon the highway thus: "This mission log-

ically could be only one of two things; either to deliver 150 pounds of yeast for the still, or to take away alcohol." This is purely a guess, but perhaps as good as any other guess. Assuming, however, it is correct, does it prove or tend to prove any one of the three charges relative to the Yanke farm? As pointed out in Girgenti v. United States, 3 Cir., 81 F.2d 741, 742: "The presence of the appellants at or near the premises where the still was in operation is not sufficient to sustain a conviction on counts charging them with possession of an unregistered still or the manufacture of mash, in the absence of any testimony that they were in charge of, or were doing work in connection with, the still. The possession of old clothes, sandwiches, and a revolver is as consistent with innocence of the offenses charged as with guilt. Graceffo v. United States [3 Cir.] 46 F.2d 852, and cases there cited. The unexplained possession of the hydrometer supports an inference that the appellants were concerned with testing liquor in some form, but was not in itself sufficient evidence to warrant the conclusion that they were connected with the operation of the still in question. * * *"

Again in Grunwald et al. v. United States, 3 Cir., 94 F.2d 952, 953, the court said:

"* * * The possession and control and the operation of a distillery is by the statute made a vital element of the offense, and the person in such possession and control is made the offender.

"* * * The defendants were there and in possession, dominion, and control. It is true that the mere presence of a defendant at or near an illicit still will not in itself justify a conviction. * * *"

Recently, this court in United States v. Cusimano, 7 Cir., 123 F.2d 611, while affirming a conviction as to a conspiracy count, reversed it as to substantive counts under circumstances which, in my judgment, were more favorable to the Government than are those in the instant case. It should be noted there is not a scintilla of evidence that the defendant was at any time on the Yanke farm, or that he had possession of a still or alcohol upon which the tax was unpaid.

It is feebly suggested that such presence was not necessary to constitute him as an aider and abettor. Even so, some affirmative act of assistance was required to constitute aiding and abetting. Was defend-

ant's presence on the highway an affirmative act relative to the possession of an unregistered still, or with carrying on the business of a distiller, or with the illegal possession of alcohol found on the farm? The mere inquiry answers itself. Moreover, defendant's presence on the highway was at least five hours subsequent to the final consummation of the offenses charged. The still and alcohol had been seized by the Government agents, which terminated such offenses. Under such circumstances, I am unable to perceive how defendant's presence on the highway could make him accountable as an accessory before the fact.

Judge KERNER, in his opinion, as does the Government in its brief, dwells at length upon the circumstances in connection with the alibi which defendant sought to prove. It is said the alibi was false. Assume that it was. How does that prove or tend to prove the offenses charged? It should be remembered that the alleged alibi had to do with defendant's presence on the highway and not his presence on the Yanke farm. The jury had a right to believe the alibi false, and that defendant was present on the highway as the Government contends. But because the jury had a right to believe he was present on the highway did not authorize it to guess that he was guilty of the offenses charged. The Government suggests a theory that this alleged false alibi is an admission of guilt as charged. This is a novel theory, unsupported by any authorities and I do not accept it.

The offenses charged on the Krupenski farm are the illegal possession of an unregistered still and the operation of a distillery without the required bond. If such a thing is possible, the proof in support of the charges is more barren than that concerning the Yanke farm. The circumstances, as related by Judge KERNER, have no tendency, either directly or indirectly, to prove the charges made in the substantive counts. At most, they are pertinent to the conspiracy counts and perhaps consistent with a theory that the defendant was interested in some manner in the purchasing and convoying of illicit alcohol. Without a scintilla of evidence that he was ever present on the Krupenski farm, the jury was permitted to speculate he was in the possession of an unregistered still and engaged in the business of operating a still without bond. Now, under the much abused theory that "the jury had the right to draw inferences from the facts established," the judgment is to be affirmed.

It may be that the result achieved is desirable as to this particular defendant. Perhaps he deserves the punishment which has been imposed. Assuming that such is the case, I am unwilling to affirm a judgment which, as I view the situation, rests upon proof so grossly inadequate. In my judgment the court below should have directed a verdict in favor of the defendant as to the substantive counts. I therefore favor a reversal as to those counts and an affirmance as to the conspiracy counts.