## UNITED STATES v. VALENTI.
### No. 162.

Circuit Court of Appeals, Second Circuit.

March 11, 1943.

Writ of Certiorari Denied June 1, 1943.

See 63 S.Ct. 1317, 87 L.Ed. ——.

I. Maurice Wormser, of New York City (Edmund Clynes, of Rochester, N. Y., on the brief), for appellant.

Goodman A. Sarachan, Asst. U. S. Atty., of Rochester, N. Y. (George L. Grobe, U. S. Atty., of Buffalo, N. Y., on the brief), for appellee.

Before SWAN, AUGUSTUS N. HAND and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Appellant, Frank Valenti, was indicted with twenty others for a conspiracy to violate the internal revenue laws between January 15, 1935, and August 31, 1941. Of those indicted, five for various reasons were not brought to trial, seven pleaded guilty, four were acquitted, and four, including appellant, were convicted by a jury. Appellant alone has appealed. He challenges the sufficiency of the evidence and also the admissibility of an answer made by a government witness on cross-examination.

At the trial the government produced extensive and convincing evidence of a conspiracy to manufacture and distribute illicit alcohol in violation of the internal revenue laws operating between 1935 and 1941 in the Western District of New York, including the city of Rochester, where defendant resided. Indeed, appellant does not seriously dispute this except to say that proof was only of a number of small conspiracies, and not of a single general conspiracy. It appeared, however, that during this period the confessed and convicted defendants other than appellant were variously connected with six illicit distilleries and three alcohol drops seized by the federal authorities. They purchased and operated trucks and automobiles, which they sometimes equipped with extra springs and frequently registered deceptively, three and four at a time, in the names of female relatives who did not themselves drive. They took these vehicles to the same garage for servicing, and the charges were always billed to two of their number, Frank Dimino and Joseph Valenti. They acted throughout with a concert and a unity of purpose which the jury could properly find to constitute a single general conspiracy. The substantial question is whether appellant was associated with this conspiracy. The evidence offered by the government to prove the connection, as necessarily happens in this type of case, is largely circumstantial.

Appellant himself was charged with three overt acts. In 1935, he was arrested upon arriving by automobile at a seized still. He was in overalls, and in his car were found twelve bags of coke and several five-gallon cans. In 1937, a still was discovered in his garage; and he was indicted and sentenced to jail for possessing and failing to register that still. In 1939, his automobile, in which he and two confessed conspirators, Frank Dimino and John DeVita, were riding, with Dimino driving, was stopped for passing a red light after leaving DeVita's home in Jamestown, New York, and was found to be carrying a box containing assorted pipe fittings, a hydrometer, of the type commonly used for testing alcohol, and a water pump similar to one found in a still.

Appellant was, furthermore, related by family ties to many of the guilty conspirators—in fact two were his brothers, Joseph Valenti and Joseph A. Valenti, one his son, Joseph J. Valenti, and one his brother-in-law, Frank Dimino. Throughout the period of the conspiracy he was in frequent contact with all the conspirators, as well as with one LoTempio, prior to the time when the government seized a large quantity of illicit alcohol in LoTempio's automobile and house. The automobiles and trucks belonging to the conspirators were often parked at his home or garage. So, also, his car was frequently observed parked with these same automobiles at other places, although never where a seizure was made; and it was once serviced at the same garage used by the conspirators and the bill rendered to Frank Dimino.

Appellant's telephone number was unpublished by his direction. Nevertheless, at least one call—on July 20, 1940—came through from the telephone of John DeVita, whose number was also unpublished. Furthermore, on September 8, 1939, an illicit still was seized at East Eden, New York; and from the billfold of one of its operators, a supposed stranger to appellant, a postcard was taken, containing on its back appellant's telephone number.

Appellant had no regular occupation. He produced some evidence that he had purchased bankrupt stocks of goods, with specific reference to some three instances.

Neither he nor any of the other defendants took the stand, but his counsel claimed that his associations with the various actors herein were only what would normally be expected from the family ties.

■ It should be added that if the inferences claimed by the government can be allowed from the evidence as to appellant's associations, it undoubtedly had a strongly persuasive influence upon the jury. Investigators of the Alcohol Tax Unit had defendant under observation for nearly the entire year 1940 and gave evidence of well over a hundred specific instances where his car was parked beside syndicate cars at various meeting places or where syndicate cars were parked in and around his home or in and around his garage. The almost constant mingling of these cars in or at his garage, often in curious combinations, with two or more cars of the same deceptive registration there at the same time, betokened an interlocking interest which the jury could hardly avoid regarding as sinister. These, coupled with the specific acts referred to, logically lead to the inference of guilt, which the jury found to be established. We think the drawing of such logical and natural inferences is the proper function of the jury, with which we should not interfere. United States v. Pandolfi, 2 Cir., 110 F.2d 736, 737, certiorari denied 310 U.S. 651, 60 S.Ct. 1103, 84 L.Ed. 1416; United States v. Manton, 2 Cir., 107 F.2d 834, 839–844, 848–850, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012.

■ It is the essence of a conspiracy conducted by other than the veriest bunglers that its terms be not express, but only gathered by implication from conduct. United States v. Mack, 2 Cir., 112 F.2d 290. Yet at times there is stated a rule of proof—now pressed upon us by appellant—so burdensome that, if literally followed, it would operate to protect the shrewder criminal. But to say as it does that all inferences drawn from facts in evidence must be consistent only with guilt and inconsistent with every reasonable hypothesis of innocence, or that there must be no reasonable doubt as to each chain of the proof, is to confuse the function of judge and jury, as well as the nature of the proof required in criminal cases. The requirement of proof beyond a reasonable doubt is a direction to the jury, not a rule of evidence; it operates on the whole case, and not on separate bits of evidence each of which need not be so proven; and it cannot be accorded a quantitative value other than as a general cautionary admonition. Wigmore on Evidence, 3d Ed.1940, §§ 216, n. 4, 2497; Hinshaw v. State, 147 Ind. 334, 47 N.E. 157, 171, 172; Jamison v. People, 145 Ill. 357, 34 N.E. 486, 492. It is the court's function to decide whether evidence is competent to justify certain inferences; it is not the court's function to decide which of various inferences should be drawn. Nor is the jury to be limited to drawing only the inference most favorable to the accused. "Such a rule would virtually eliminate circumstantial evidence as a means of proof. * * * It is not the generally accepted rule." State v. Murphy, 124 Conn. 554, 1 A.2d 274, 278, citing Wigmore, op. cit., and cases; L. Hand, J., in United States v. Becker, 2 Cir., 62 F.2d 1007, 1010. And no separate charge is to be made suggesting that circumstantial evidence is on a different and lower plane than other forms of evidence. United States v. Becker, supra; Wigmore on Evidence, § 26.

We have applied these principles repeatedly in allowing the jury to draw rational inferences from facts in evidence. Thus, in cases involving illicit stills, we have upheld verdicts based on evidence of association with conspirators, attendance at drops, renting premises afterwards misused, giving and receiving an unusual number of telephone calls, and so on. United States v. Novick, 2 Cir., 124 F.2d 107, certiorari denied 315 U.S. 813, 62 S.Ct. 795, 86 L.Ed. 1212; United States v. Gallo, 2 Cir., 123 F.2d 229; United States v. Sciortino, 2 Cir., 115 F.2d 504, certiorari denied 312 U.S. 691, 61 S.Ct. 710, 85 L.Ed. 1128; United States v. Pandolfi, supra.[1] And in a wide variety of other situations we have allowed this type of evidence as to per-

---

[1] The point is well illustrated by cases, relied on by appellant, where we held the proof insufficient, as in United States v. Silva, 2 Cir., 131 F.2d 247, where there was nothing to show that the female defendant did not act alone or that it was not a "one-woman still," or United States v. Falcone, 2 Cir., 109 F.2d 579, affirmed 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128, where the proof of *joint* action was likewise missing, or United States v. Silva, 2 Cir., 109 F.2d 531, where the connection of the appealing defendant with the still and its operator was of the slightest character beyond mere acquaintanceship.

sons on the outer fringes of a proved conspiracy. United States v. Potash, 2 Cir., 118 F.2d 54, certiorari denied 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540; United States v. Goldman, 2 Cir., 118 F.2d 310, certiorari denied 313 U.S. 588, 61 S.Ct. 1109, 85 L.Ed. 1543; United States v. Mortimer, 2 Cir., 118 F.2d 266, certiorari denied 314 U.S. 616, 62 S.Ct. 58, 86 L.Ed. 496; United States v. Buckner, 2 Cir., 108 F.2d 921, 930, certiorari denied 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016; United States v. Manton, supra. We have also pointed out that "logically the sum is often greater than the aggregate of the parts, and the cumulation of instances * * * may have a probative force immensely greater than any one of them alone," United States v. White, 2 Cir., 124 F.2d 181, 185, and that the jury having acted, all inferences are indulged in favor of the verdict. United States v. Manton, supra. Of course, these results could be duplicated from other circuits; thus, a recent case suggests that the jury may have properly found guilt upon a single inference from an alibi proved false. United States v. Infusino, 7 Cir., 130 F.2d 561; Wigmore on Evidence, §§ 278, 279.

■ Here the bases for inference seem to us quite substantial. Evidence of appellant's previous connection with the business was important just for the purpose of establishing that connection; even though now, because of passage of time or of previous prosecution, it could not be used as a basis of prosecution of a substantive crime, it did show the original existence and furtherance of the conspiracy, and afforded a background against which to consider the evidence of later acts as bearing upon his asserted severance of all connection with the group. Culp v. United States, 8 Cir., 131 F.2d 93; Shaw v. United States, 5 Cir., 41 F.2d 26. Against this there was evidence affording a rational basis for the inference that the jury made in his constant association with the group, in the unusual, one might even say otherwise inexplicable, car activity in and about his garage, in a telephone number undisclosed except to associates, in limited ostensible means of support, and in riding with other members of the group carrying the tools of the trade.

■ Nor was there a variance in pleading and proof by a showing of only small and unrelated conspiracies, instead of the single broad conspiracy alleged in the indictment. The evidence was such that the jury could find a general design on the part of many. It was not necessary that appellant or any other member of the group participate in all the acts. American Medical Ass'n v. United States, 63 S.Ct. 326, 87 L.Ed. ——; Braverman v. United States, 63 S.Ct. 99, 87 L.Ed. ——. This also answers appellant's further contention that prosecution is barred by the three-year statute of limitations, 18 U.S.C.A. § 582.

■ The error assigned as to the ruling on evidence occurred when an Internal Revenue Agent, a witness for the government, was on cross-examination by counsel for codefendants. Being questioned about events at a raid in 1940 involving appellant's son and brother, and upon persistent urging to state "all of the conversation you had with these two boys on that particular morning," he said: "I looked at these two youngsters and I said, 'Is this a nice place for you two kids to be? I would give a thousand dollars to have your father where you are. I do not get any fun out of arresting 19-year-old boys.'" Appellant's lawyer objected, but, when the United States Attorney said, "He asked for it," did not press for its exclusion by the court, which appears never in fact to have ruled on the matter.

The matter appears to have been considered trivial at the time; and we certainly see nothing in this likely to affect the result or as justifying interference with a long and well conducted trial. Appellant's counsel later went into extensive cross-examination of the witness on this point as to the circumstances under which the remark was made, whether there were similar statements, or whether the witness was prejudiced against appellant, and so on. Appellant is the one who magnified an unimportant occurrence into something more lengthy, at least in the record, though still probably of slight effect upon the jury. That revenue agents, however competent, are not entirely unprejudiced as to persons against whom they have brought charges will hardly come as a surprise to a New York jury. If we thought the matter of any importance, we might well hold appellant to have waived any error in the admission of the statement. United States v. Gruber, 2 Cir., 123 F.2d 307; Wigmore on Evidence, § 18.

Affirmed.