89 N.J. Super. 596 (1965)
215 A.2d 794
STATE OF NEW JERSEY, PLAINTIFF,
v.
VINCENT DeLOUISA, ET AL., DEFENDANTS.
Superior Court of New Jersey, Union County Court, Law Division  Criminal.
Decided December 13, 1965.
*598 Mr. Raymond D. O'Brien, Corporation Counsel, City of Elizabeth, for plaintiff.
Mr. Hyman Isaac for defendants (Messrs. Reibel, Isaac & Tannenbaum, attorneys).
FULOP, J.C.C.
This is a consolidated appeal by 33 defendants from convictions in the Municipal Court of the City of Elizabeth. It is being heard de novo on stenographic transcript.
A complaint was filed against defendants charging "that on the 10th day of October, 1964, at Elizabeth, County of Union and State of New Jersey" defendants "then and there at 7 Center [sic] St., Elizabeth, N.J. disorderly persons, engaged in a card game, contrary to the provisions of City Ordinance to Prevent and Prohibit Gambling in the City of Elizabeth, N.J."
Defendants were tried and convicted. Each was sentenced to pay a fine of $200 and ten days in the county jail, jail sentence suspended. They all appeal.
It will be helpful to set out in full the 1956 ordinance under which defendants were charged and the 1959 amendment. They read as follows:
*599 "AN ORDINANCE TO PROHIBIT AND PREVENT GAMBLING IN THE CITY OF ELIZABETH AND PRESCRIBING PENALTIES FOR THE VIOLATION THEREOF.
BE IT ORDAINED BY THE MAYOR AND CITY COUNCIL OF THE CITY OF ELIZABETH:
SECTION 1. No person or persons, firm or corporation shall deal, play or engage in faro, roulette, dice or card games or other device, or have in his possession any ticket, slip or other writing or printing or any interest or share or showing or indicating an interest, share, bet or pledge in any pool, lottery, racing contest or other game of chance, or shall gamble in any form; and no person, persons, firm or corporation shall aid, abet, assist or participate in any such pool, lottery, race or other contest or game of chance.
This section shall not be construed to apply to the holding and operation of games of chance commonly known as bingo or lotto under a license duly issued under the provisions of the `Bingo Licensing Law,' and the holding and operation of games of chance commonly known as a raffle or raffles under a license duly issued under the provisions of the `Raffles Licensing Law.'
SECTION 2. Any person or persons, firm or corporation violating any of the provisions of this ordinance shall be subject to a fine not exceeding five hundred ($500.00) dollars, to be assessed and recovered in the Magistrate's Court of the City of Elizabeth, or shall be imprisoned in the Union County Jail for a term not exceeding six (6) months, or both, at the discretion of the court.
SECTION 3. All ordinances or parts of ordinances inconsistent with the provisions of this ordinance be and the same are hereby repealed, and this ordinance shall take effect immediately."
Approved November 9, 1956.
"AN ORDINANCE TO AMEND AN ORDINANCE ENTITLED `AN ORDINANCE TO PROHIBIT AND PREVENT GAMBLING IN THE CITY OF ELIZABETH AND PRESCRIBING PENALTIES FOR THE VIOLATION THEREOF,' ADOPTED NOVEMBER 8, 1956.
BE IT ORDAINED BY THE MAYOR AND CITY COUNCIL OF THE CITY OF ELIZABETH:
SECTION 1. That Section 2 of the above ordinance be amended to read as follows:
`Section 2. Any person or persons, firm or corporation violating any of the provisions of this ordinance shall be subject to a fine not exceeding two hundred ($200) dollars, or shall be imprisoned in the Union County Jail for a term not exceeding ninety (90) days, or both, at the discretion of the court.'
SECTION 2. All ordinances or parts of ordinances inconsistent herewith be and the same are hereby repealed, and this ordinance shall take effect immediately."
Approved August 6, 1959.
*600 It is first argued that the ordinance is invalid because it prohibits card playing for amusement without stakes which would not constitute gambling.
It is unnecessary to decide whether an ordinance prohibiting such games would be invalid. This ordinance does not prohibit games played for amusement. It is entitled "An Ordinance to Prohibit and Prevent Gambling, etc." The title may be examined to aid construction of the text. Pancoast v. Director General, 95 N.J.L. 428 (E. & A. 1921); Casey v. Male, 72 N.J. Super. 288 (Law Div. 1962). The ordinance provides that no one shall "deal, play or engage in faro, roulette, dice or card games," or possess lottery slips, etc., "or * * * gamble in any form." Faro, roulette and dice are common gambling devices. While any device may be used for amusement without stakes, it is not to be supposed that the city was prohibiting children from playing with toys. The addition of the words "or shall gamble in any form" in the series, separated only by commas, indicates clearly that the prior words in the series refer to gambling games. Words in a series are generally understood to be things of the same kind. See the ejusdem generis rule under which general words following specific ones in a series are deemed to refer to things of the same class. Denbo v. Moorestown Twp., 23 N.J. 476 (1957). Words take color from associated words. Noscitur a sociis. Martell v. Lane, 22 N.J. 110 (1956).
In any event, defendants cannot object to the ordinance on this ground. The evidence shows that they were playing cards for money, i.e., gambling. Only one prosecuted under the ordinance for playing cards without gambling might raise the point. The applicable rule is stated at 16 C.J.S., Constitutional Law § 76 as follows:
"* * * one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict with the constitution."
McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); State v. Czarnicki, 124 N.J.L. 43 *601 (Sup. Ct. 1940); State v. Ray, 4 N.J. Misc. 493, 133 A. 486 (Sup. Ct. 1926); 16 C.J.S., Constitutional Law § 84.
The ordinance as originally adopted in 1956 provided for a fine not exceeding $500 or imprisonment not exceeding six months, or both. Defendants assert that in 1959, on appeal from a conviction in the Municipal Court of the City of Elizabeth, this court held the penalty provisions of this ordinance invalid for the reason that under R.S. 40:49-5 the municipality's authority to provide penalties is limited to imprisonment not exceeding 90 days and a fine not exceeding $200 or both. Appellant's brief quotes as follows from Judge Feller's unreported opinion:
"Therefore it is apparent that Section 2 of the ordinance contains penalty provisions which are in excess of the maximum limitations imposed by N.J.S. 40:49-5, and is therefore void. Since the penalty provisions of the ordinance is [sic] void, there exists no other legal penalty provision in said ordinance under which a fine in any amount could lawfully be imposed. Public policy is ill-served by convictions as for crime under a void statutory provision. State v. Guida, 119 N.J.L. 464 (E. & A. 1937)."
In August 1959 the City of Elizabeth amended the second section of the ordinance to provide the permitted penalties. It did not re-enact the entire ordinance.
It is argued that the ordinance was voided in toto in the case referred to and was therefore not amendable by the amendment of the second section. The argument is that when the penalty clause fails, there is nothing left of a penal ordinance and hence there is nothing to amend. The definition of the offense standing alone would be meaningless. So would the penalty provision alone. Defendants cite 6 McQuillin, Municipal Corporations (3d ed. 1949), § 21.05, p. 184; Newark v. Grodecki, 21 N.J. Misc. 241, 33 A.2d 115 (C.P. 1943), and Lassiter v. Atlantic City, 86 N.J.L. 87 (Sup. Ct. 1914).
It should first be noted that the proceeding in this court in the prior unreported case merely set aside a conviction in the municipal court for the reasons stated. No judgment *602 was entered declaring the ordinance invalid. As has been stated, the opinion was not published. While the determination was undoubtedly correct, such a judgment does not void or invalidate an ordinance. It merely refuses to enforce it. Cf. Penna. R.R. Co. v. Jersey City, 47 N.J.L. 286, 289 (E. & A. 1885). If it were otherwise, every person concerned with the provisions of a municipal ordinance would be required to examine the unreported decisions of every court which may have adjudicated a case under that ordinance. This would be an impossible task and such hidden sources cannot make law of general application.
McQuillin, op. cit., generalizes that a void ordinance may not be amended, largely on the basis of cases such as Lassiter v. Atlantic City, 86 N.J.L. 87 (Sup. Ct. 1914). In that case, prior to the prosecution under the ordinance, a writ of certiorari had been allowed to review the ordinance directly. During the pendency of the certiorari proceedings the municipality amended one section of the ordinance and prosecuted the defendant. In the meantime the Supreme Court held the ordinance invalid in toto. In the cited decision it was held that the amendment adopted during the pendency of the proceedings and while a restraint was in force against the municipal authorities could not stand. The court also said, "* * * but an amendment cannot restore an ordinance in toto which the court subsequently declared void." The case dealt with amendment of an ordinance expunged by a direct proceeding on certiorari. It is not authority for the proposition that a defective ordinance which a court has refused to enforce cannot be corrected by amendment.
Much more to the point is the case of Allison v. Corker, Assessor, 67 N.J.L. 596 (E. & A. 1902). The State's highest court there held that an unconstitutional statute may be amended and rendered constitutional. Justice Collins said:
"* * * But I am prepared to go farther, and hold that an unconstitutional statute is nevertheless a statute; that is, a legislative act. Such a statute is commonly spoken of as void. I should prefer to call it unenforceable, because in conflict with a paramount law. If properly *603 to be called void, it is only so with reference to claims based upon it. Neither of the three great departments to which the constitution has committed government by the people can encroach upon the domain of another. The function of the judicial department with respect to legislation deemed unconstitutional is not exercised in rem, but always in personam. The supreme court cannot set aside a statute as it can a municipal ordinance. It simply ignores statutes deemed unconstitutional. For many purposes an unconstitutional statute may influence judicial judgment, where, for example, under color of it private or public action has been taken. An unconstitutional statute is not merely blank paper. The solemn act of the legislature is a fact to be reckoned with. Nowhere has power been vested to expunge it or remove it from its proper place among statutes." (at pp. 600-601)
See also Lappas v. Bd. of Adjustment, Westwood Borough, 23 N.J. Super. 553 (App. Div. 1952).
It is true that the court distinguished statutes from ordinances which may be expunged or set aside by the Superior Court in appropriate proceedings. But that distinction points up the fact that an ordinance is not a nullity incapable of amendment when it has not been ordered expunged, when in fact it has not been directly attacked by an action in lieu of prerogative writs. The mere fact that it is unenforceable and has been so declared with respect to a specific defendant in an action under it does not wipe out the ordinance. Such an ordinance may be amended so as to correct the defect and render it valid in its application to all conduct following the amendment. No statute or constitutional provision is cited requiring reenactment in toto of a defective ordinance in order to correct it, whether it be a penal ordinance or a regulatory ordinance.
I therefore hold that the amendment to the ordinance was valid and the ordinance as so amended is within the statutory powers of the municipality. N.J.S.A. 40:48-1 and 40:48-2.
Appellants suggest that the ordinance is invalid because it attempts to prohibit a crime made a misdemeanor by N.J.S. 2A:112-1 and provides lesser penalties. However it has been held that "the same act * * * may constitute an offense against the state, * * * and an offense against" the municipality and "falls within that category which permits both the *604 state and municipality to punish for the violation thereof without violation of any constitutional principle." Hunter v. Teaneck Twp., 128 N.J.L. 164 (Sup. Ct. 1942); State v. Greco, 86 N.J. Super. 551 (Cty. Ct. 1965). See also Minochian v. Paterson, 106 N.J.L. 436 (E. & A. 1930).
The same acts may constitute indictable and nonindictable offenses. The "proper prosecuting authority in the sound exercise of the discretion committed to him may proceed under either * * *." State v. States, 44 N.J. 285 (1965). In this instance the case was prosecuted in the municipal court by an assistant prosecutor, indicating that the county prosecutor approved proceeding under the municipal ordinance rather than by criminal indictment. The advantage to defendants is obvious.
Defendants contend that the magistrate was disqualified because he had been subjected to local newspaper pressure. A glance at the exhibits indicates that a local newspaper was pressing for disposition of the cases, not for conviction. It is to be presumed that one who has taken an oath to perform the duties of a magistrate will perform those duties impartially without regard to any outside pressures.
There is no evidence of unfairness or partiality. The defendants received a fair trial.
In any event, the magistrate's state of mind is immaterial. The present appeal results in a trial de novo on the transcript. Since defendants did not testify, there is no occasion to pass on the credibility of witnesses giving conflicting testimony. No weight need be given to the magistrate's personal observations of witnesses. If there had been errors in the admission or exclusion of evidence, they could be corrected in this court. The consideration of the matter in this court is therefore not affected in any way by the magistrate's attitude. My conclusions have been arrived at independently. They have not been influenced by the findings of the magistrate nor by newspaper pressures.
Defendants argue that none of them can properly be found guilty because the evidence failed to prove guilt beyond a *605 reasonable doubt. Only one man was seen with cards in his hand. Others, some unidentified, were sitting around the table with cards and money on it while others were walking around the room. The argument is that the State must produce an eyewitness to prove that each defendant actually played for stakes.
It is obvious that the kind of proof which defendants maintain to be necessary for conviction would be extremely difficult to obtain, especially in view of the precautions taken by defendants as hereinafter indicated. If such proof were required, the criminal law would be rendered impotent. Circumstantial evidence is quite sufficient.
The ordinance prohibits aiding and abetting as well as playing, dealing, etc. The common law did not distinguish between principal and aider and abettor in offenses below the grade of felony. State v. Morano, 134 N.J.L. 295 (E. & A. 1946). In all crimes now, aiders and abettors are principals. N.J.S. 2A:85-14. If there was a gambling card game going at 4:30 in the morning in this loft-like clubhouse, it may be inferred that all who were present participated in some degree. See State v. Smith, 32 N.J. 501 (1960), certiorari denied 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961).
Thirty-three men were gathered on the upper floor of the building. The outside doors were barred by cross bars placed on iron brackets. At the inside of the front door on the first floor there was a button which, when pressed, sounded a buzzer located in the ceiling of the second-floor room. Over the stairway leading to the second floor a section of the sheet rock wall in the upper room had been cut open in such manner that a person seated or standing at the opening could see persons coming up the stairs. A desk and chair and telephone were located next to this opening. The police called this an observation post.
The upstairs door had an opening at the level of the eyes of a tall man, designated as a peep hole. In the upstairs room *606 there were chairs and a rectangular table and vending machines.
On October 9, 1964 the police obtained a search warrant for the premises to search for and seize cards, dice, monies and other gambling paraphernalia. This search warrant was attacked on motion and was sustained by another judge of this court. I have not examined the evidence leading to its issuance.
At about 4:20 in the morning of October 10, 1964, a truckload of police went to the scene. A ladder was placed at the outside of the building and one officer mounted it. He could not see into the second floor because the ladder was not long enough. He did, however, hear the following words spoken in the room: "Aces up" and "What is this [obscenity] of five guys handling the [obscenity] money." He also heard the sound of coins jingling.
The officers then obtained a longer ladder and placed it near an exhaust fan in the second floor wall at the rear of the building. An officer again mounted. Between the blades of the rotating fan he saw about three-quarters of a rectangular table. There were cards and money on the table and men seated around them. He could see one man with cards in his hand. He came down and told the other officers that a game was in progress.
Two officers then mounted the ladder with a camera and a metal bar. When the police below struck the front door with a sledge hammer (after their knock was unanswered), there were shouts in the second-floor room, "The cops are here," "Its the cops, get the money," and a scampering out. One officer on the ladder broke a window and another took a photograph of the men in the room crowding out. One man with his back to the camera is shown half-risen. His left hand is in a position indicating that he had released cards from it but no cards or money are visible in the photograph. One man is eating a sandwich.
Many of the men ran down the stairs but were prevented by the police from leaving. On the second floor the police *607 found a deck of cards on the rectangular table and other decks in the bottom of the Coca Cola dispensing machine. Paper cups and the like were strewn under the table indicating an extended session. On the men the police found $8,882.24, of which nearly $4,000 was in the possession of one man. See State v. Morano, 134 N.J.L. 295 (E. & A. 1946). It was stipulated that all of the defendants were present in the upper room at the time.
The barred doors, the buzzer, the lookout station, the peep hole, the cards, the location, the hour, the observations of the police through the fan, the cry of "cops," the effort to escape bespeak an illegal enterprise. Cards in hand, money on the table leave no room for doubt. The evidence is circumstantial but it is convincing beyond a reasonable doubt that there was a large scale gambling card game in progress. Minochian v. Paterson, 106 N.J.L. 436, 442 (E. & A. 1930); State v. Sachs, 69 N.J. Super. 566 (App. Div. 1961). In State v. Kuznitz, 36 N.J. Super. 521 (App. Div. 1955), certification denied 20 N.J. 136 (1955), the Appellate Division said:
"The evaluation of the State's case must be determined, not as the defendant seems to urge, by fragmenting the proof and considering each factor in severe solitude from the rest, but by assaying the case in its entirety."
I find that the proof establishes beyond a reasonable doubt that all present were gambling with cards or aiding and abetting in violation of the ordinance.
I find the defendants guilty of violation of the ordinance.