150 N.J. Super. 436 (1977)
375 A.2d 1234
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LYNDA MUNIZ AND JOSE MUNIZ, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1977.
Decided June 8, 1977.
*438 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Edward A. Halpern, Designated Counsel, argued the cause for appellants (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. William F. Bolan, Jr., Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by HORN, J.A.D.
Defendants Jose Muniz and Lynda Muniz, his wife, were charged with abusing and being cruel to their daughter Joanne (first count) and with neglecting said *439 daughter (second count), both in violation of N.J.S.A. 9:6-3. Jointly tried to a jury, Jose was convicted of cruelty on the first count and acquitted of neglect on the second count. Lynda was acquitted of abuse and cruelty on the first count and convicted of neglect on the second count.
The judge sentenced Jose to a term of 18 months in the Hudson County Penitentiary and Lynda to a term of one year in the same institution. Lynda's sentence was suspended and she was placed on probation for three years. This appeal by both defendants followed.
Defendants contend that they are each entitled to a reversal of their respective convictions for numerous reasons which are related hereafter.

I
At the close of the State's case both defendants unsuccessfully moved for judgments of acquittal. These motions were renewed after the evidence of all parties had been closed. The judge reserved decision. Following the verdicts each defendant moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The judge denied the motions. Since the test as to whether a motion for acquittal and a motion for judgment notwithstanding the verdict is the same, State v. Kluber, 130 N.J. Super. 336, 341 (App. Div. 1974), certif. den. 67 N.J. 72 (1975), we will consider these motions together.
Whether the judge considers a motion for judgment of acquittal at the close of the State's case or after all the evidence is closed the test to be applied is the same  whether the evidence submitted by the State, viewed in its entirety, be it direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. State v. Reyes, 50 N.J. 454, 459 (1967); State v. Fiorello, 36 N.J. 80, 86-87, 90-91 (1961), cert. *440 den. 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962); State v. Kluber, supra, 130 N.J. Super. at 341-342. On such a motion the trial judge is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State. State v. Kluber, supra.
The State, in addition to introducing in evidence the grand jury testimony of defendants, also presented testimony of Daisy Castillo, sister of Jose, and of a registered pediatric nurse and a physician, both of whom are affiliated with St. Mary's Hospital.
The evidence tended to establish that defendants were married and were the parents of Joanne, who was born on September 17, 1973. She was about five weeks old on October 29, 1973. On the latter date, sometime around eight o'clock in the morning, defendants brought Joanne to St. Mary's Hospital. Examination revealed two bruises in the rib area, bilateral fractures of eight ribs,[1] a distended and rigid abdomen, scratches on her face and upper thighs, two ulcerated patches at the back of her throat, sores around her lips, crusted area around the umbilicus, cradle cap, dirt under both arms, discoloration at the right and left lower rib areas, continued crying and rapid respiration.
When lifted by the doctor the child's ribs "crunched." The doctor testified that the ribs of a five-week infant are more elastic than those of an adult and hence are difficult to break. He also stated that in his opinion the rib injuries were sustained within 28 to 48 hours of admission, but that it was more likely that the injuries occurred within 10 to 12 hours of admission. This latter conclusion was arrived at because a baby with such multiple fractured ribs would cry, *441 refuse feedings and would cause anyone taking care of her to seek help.
He also opined that the fractures could not have been the result of a fall or self-inflicted, nor could they have been caused by either an adult's or a child's hugging the infant.
The grand jury testimony of defendants which was read to the jury tended to show that the child had been continuously in the custody of her parents on October 28, 1973, a Sunday, and on October 29 until she was brought to the hospital, with the exception of about two to three hours when she was left with Daisy Castillo. On Sunday, the 28th, defendants left Joanne at the home of Mrs. Castillo while they visited a cemetery. When they returned about two hours later Mrs. Castillo mentioned that the baby had been crying and would not take her milk, and suggested that Joanne might be sick and should be taken to the hospital.
Although Jose testified before the grand jury that they decided to take the child to the hospital at about four o'clock in the morning of October 29 because of the baby's sustained crying, there was no explanation of how the injuries were inflicted. Both defendants said Joanne behaved normally from the time they returned home after taking her from Mrs. Castillo's care until the early hours of October 29.
The State was obliged to prove its case against defendants here, as in so many child-abuse cases, by means of circumstantial evidence. If circumstantial evidence is of sufficient quality to convince a jury beyond a reasonable doubt of defendants' guilt, it does not matter that it is circumstantial. State v. Dancyger, 29 N.J. 76, 84 (1959), cert. den. 360 U.S. 903, 79 S.Ct. 1286, 3 L. Ed 2d 1255 (1959); State v. Leicht, 124 N.J. Super. 127, 134-135 (App Div. 1973). Circumstantial evidence is often more persuasive than direct evidence. State v. Mayberry, 52 N.J. 413, 437 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969); State v. Corby, 28 N.J. 106, 119 (1958), overruled in part on other grounds, State v. Taylor, *442 46 N.J. 316, 336 (1966), cert. den. 385 U.S. 855, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966). It has been recognized in numerous cases that since criminal activities are ordinarily not recognizably performed in the open, proof of such activities can only be established by circumstantial evidence. State v. Bulna, 46 N.J. Super. 313, 318 (App. Div. 1957), aff'd 27 N.J. 93 (1958). See also, State v. DeLouisa, 89 N.J. Super. 596, 605 (Cty. Ct. 1965).
The core of defendants' argument under this point seems to be that there was insufficient circumstantial evidence to warrant the jury's conclusion, i.e., that the evidence did not generate inferences of the necessary elements of the crimes "grounded in strong probability." State v. Trypuc, 53 N.J. Super. 6, 12 (App. Div. 1958); State v. Lamoreaux, 13 N.J. Super. 99, 103 (App. Div. 1951).
What was stated about this subject in State v. Mayberry, supra, is particularly appropriate when applied to the circumstantial evidence adduced before the jury in this case:
The defendant Kestner asserts that the State's proof of attempted robbery was circumstantial rather than direct and was insufficient to satisfy the requirements of State v. Donohue, 2 N.J. 381 (1949). In Donohue the Court expressed the sweeping view that when the State's evidence is circumstantial "all of the circumstances not only must concur to indicate a defendant's guilt but they must also be inconsistent with any other rational conclusion" and they must exclude "every other hypothesis except that of guilt." 2 N.J., at p. 390. This broad expression was never applied literally, for if it had been it would have unreasonably defeated many legitimate prosecutions based on circumstantial evidence where it was possible "to devise speculative hypotheses consistent with defendant's innocence." People v. Sullivan, 22 Ill.2d 122, 174 N.E.2d 860, 861 (1961).
* * * It should no longer be cited to us for under the later formulation the proper issue is simply whether the evidence, viewed in its entirety including the legitimate inferences therefrom, is sufficient to enable a jury to find that the State's charge has been established beyond reasonable doubt. See State v. Fiorello, supra, 36 N.J. 80; State v. Ray, supra, 43 N.J. 19. The approach is the same though the testimony is circumstantial rather than direct; indeed in many situations circumstantial evidence may be "more forceful and more persuasive than direct evidence." State v. Corby, 28 N.J. 106, 119 (1958); * * *. [52 N.J. at 436-437]
*443 Defendants concede that the evidence was strong enough to permit the jury to find that defendants were the parents of the child; that the injuries occurred within 48 hours of the doctor's examination, with the probability that they occurred even closer to the time of the hospital examination of the child around 10 A.M. on October 29; that defendants were in custody of the child; that the injuries could not have occurred by accident; that the injuries caused pain to the child, reflected in its crying and in other manifestations, and that the jury could reasonably have ruled out the probability of the injuries being incurred while the child was in Mrs. Castillo's care.
We again observe that the charges levelled against defendants consisted of abuse and cruelty on the first count and neglect on the second count. The judge defined for the jury each of these charges, substantially in the words of the statute, N.J.S.A. 9:6-1, which partly reads as follows:
Cruelty to a child shall consist in any of the following acts: (a) inflicting unnecessarily severe corporal punishment upon a child; (b) inflicting upon a child unnecessary suffering or pain, either mental or physical; (c) habitually tormenting, vexing or afflicting a child; (d) any willful act of omission or commission whereby unnecessary pain and suffering, whether mental or physical, is caused or permitted to be inflicted on a child; (e) or exposing a child to unnecessary hardship, fatigue or mental or physical strains that may tend to injure the health or physical or moral well-being of such child.
Neglect of a child shall consist in any of the following acts, by anyone having the custody or control of the child: (a) willfully failing to provide proper and sufficient food, clothing, maintenance, regular school education as required by law, medical attendance or surgical treatment, and a clean and proper home, or (b) failure to do or permit to be done any act necessary for the child's physical or moral well-being. [Emphasis supplied]
Although defendants' arguments focus on the physical injuries inflicted upon the child, the definition of cruelty includes not only physical abuse but also willful acts of omission whereby unnecessary pain and suffering are caused or permitted to be inflicted. We also note that "neglect" includes *444 a "failure to do or permit to be done any act necessary for the * * * physical * * * well-being" of the child.
Within these definitions and within the framework of the evidence it was appropriate for the jury to consider whether under the circumstantial evidence adduced before it either one or both defendants were guilty of cruelty or neglect as defined for them and whether the evidence was sufficient to permit the jury to determine that either one or both inflicted the injuries upon the child, or, if only one was responsible, that the other either permitted the same to be done without sufficient effort to prevent the assault or failed "to do or permit to be done any act necessary for the child's physical * * * well-being." This latter definition could include a failure to complain to the proper authorities, failure to call the hospital and ask for emergency help or even failure to have sought medical care sooner. It could also include neglect as indicated by the physical conditions in addition to or separate from the traumatically initiated physical condition of the child. State v. Burden, 126 N.J. Super. 424 (App. Div. 1974), certif. den. 65 N.J. 282 (1974). We find no error in the judge's refusal to grant judgments of acquittal or judgments n.o.v.
We now consider the trial court's denial of a new trial. Following the close of the State's evidence, defendants and the detective who signed the child-abuse complaint testified. The detective related that when he appeared at the Muniz house unannounced on October 31, 1973 he found the place exceptionally clean. The testimony of defendants added very little to that which they had given before the grand jury. The appropriate test, whether utilized by the trial judge or on appeal, is the same  namely, was there a manifest denial of justice under the law. R. 3:20-1; State v. Sims, 65 N.J. 359 (1974).[2] We are required, however, to give deference *445 to the views of the trial judge, at least as to the credibility and demeanor of witnesses and his general "feel of the case." State v. Sims, supra, at 373; Dolson v. Anastasia, 55 N.J. 2 (1969).
We are of the view that under the terms of the statute as well as the evidence the jury was able to do as they actually did  pinpoint the respective criminal acts of each defendant within the purview of the definition of each charge. The jury may have appropriately considered the implausibility of defendants' testimony. Cf. State v. Tornquist, 254 Iowa 1135, 120 N.W. 2d 483, 489 (Sup. Ct. 1963). Moreover, in such a case as this where the jury has the right to disbelieve defendants' testimony, "`comparatively slight evidence on the part of the prosecution will be accepted' because of the readiness with which the defendant[s] could supply the exculpatory evidence, if it exists." State v. New York Central R. Co., 37 N.J. Super. 42, 50 (App. Div. 1955).[3] See also, Caminetti v United States, 242 U.S. 470, 493, 37 S.Ct. 192, 197-198, 61 L.Ed. 442 (1917). In that case the court held that if a defendant in a criminal case elects to testify,
* * * if he has failed to deny or explain acts of an incriminating nature that the evidence of the prosecution tends to establish against him, such failure * * * may be considered by the jury with all the other circumstances in reaching their conclusion as to his guilt or *446 innocence; since it is a legitimate inference that, could he have truthfully denied or explained the incriminating evidence against him, he would have done so.
See State v. Fioravanti, 46 N.J. 109, 116 (1965), cert. den. 384 U.S. 919, 86 S.Ct. 1365, 16 L.Ed.2d 440 (1966).
We conclude that the jury could have found both defendants guilty of cruelty and neglect in the light of the adduced facts and the legitimate inferences therefrom, as well as the definitions of the respective crimes.[4] That the jury failed to convict Jose of neglect and failed to convict Lynda of cruelty is of no moment. Verdicts on separate counts of the same indictment need not be consistent. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); State v. Still, 112 N.J. Super. 368, 373 (App. Div. 1970), certif. den. 57 N.J. 600 (1971).
We now take up the other contentions of defendants.

II
The motion to dismiss the indictment was properly denied.
While a grand jury cannot be permitted to indict upon mere whim or caprice, it is only required to find that a crime was committed and that the accused person should be required to stand trial on the charge. [State v. Price, 108 N.J. Super. 272, 276-277 (Law Div. 1970)]
An indictment should be dismissed only on the clearest and plainest grounds. State v. Weleck, 10 N.J. 355, 364 (1952); State v. Ferrante, 111 N.J. Super. 299, 304 (App. Div. 1970). The evidence before the grand jury in this case was sufficient to support a finding that a crime, or crimes, had *447 been committed and that defendants should be required to stand trial.

III
The trial judge did not err in permitting Dr. Garrow to testify as an expert in injuries of children. He was a well qualified pediatric surgeon and his testimony was well within the scope of his special knowledge, experience and training. Evid. R. 56(2).

IV
There was no error in the jury charge. The judge properly said that neglect could be shown by proof of a willful failure to provide proper food, clothing, maintenance or medical treatment for the baby. He also correctly stated that the word "willful" in that definition meant "intentionally or purposely as distinguished from inadvertently or accidentally." State v. Burden, supra, 126 N.J. Super. at 427. State v. Pickles, 46 N.J. 542 (1966), is inapposite.

V
The judge properly instructed the jury to rely upon its own recollection as to Dr. Garrow's testimony regarding the issue of neglect. In fact, counsel for Mrs. Muniz, who alone was convicted of neglect, specifically asked the judge to so instruct the jury. No plain error occurred. R. 2:10-2.
We have carefully considered all other contentions of defendants and find them to be without merit. For the foregoing reasons the convictions of both defendants are
Affirmed.
NOTES
[1] Actually there were 14 fractured ribs, but the testimony of Dr. Eugene Garrow was limited by reason of incomplete hospital records which left counsel with the belief that only eight ribs were fractured. These eight were the 4th, 5th, 6th, 7th and 8th on the right side, and the 5th, 6th and 7th on the left side.
[2] See Pressler, Current N.J. Court Rules (1976), comment following R. 3:20-1, which indicates that the difference in the tests stated in R. 2:10-1 and R. 3:20-1 is probably an oversight in redrafting R. 3:20-1, but which difference is semantic only.
[3] It must be remembered that we are not concerned with a case where defendant has not testified, so that Fifth Amendment considerations may be applicable. In the instant case both defendants voluntarily testified, so that the holding of State v. New York Central R. Co., supra, is stronger here than in that case, where defendant produced no proofs. The latter case was decided before Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), and Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which made it clear that no inferences could be drawn from a defendant's failure to testify in a state criminal case. See State v. Fioravanti, supra, 46 N.J. at 114-116.
[4] Because of the verdicts rendered in this case holding Jose guilty of cruelty and Lynda guilty of neglect, we need not reach the questions raised by defendants as to the merger of the respective offenses. Accordingly, we pass no opinion on that point.