**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2653-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CSHETARA W. MCLAUGHLIN, a/k/a
CATHERINE MCLAUGHLIN, TARA
MCLAUGHLIN, BEAUTY MCLAUGHLIN,
SHETARA W. MCLAUGHLIN,

    Defendant-Appellant.

_____

Argued September 19, 2017 — Decided October 10, 2017

Before Judges Yannotti and Leone.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Indictment No. 13-
06-0573.

John Douard, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E.
Krakora, attorney; Mr. Douard, of counsel and
on the briefs).

Milton S. Liebowitz, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued
the cause for respondent (Thomas K. Isenhour,
Acting Union County Prosecutor, attorney;
Stephen W. Bondi, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Defendant was charged with second-degree aggravated assault, N.J.S.A. 2C:12-1b(1) (count one); third-degree aggravated assault, N.J.S.A. 2C:12-1b(2) (count two); and third-degree possession of a weapon (a corkscrew) for an unlawful purpose, N.J.S.A. 2C:39-4d (count three). The trial judge granted the State's motion to dismiss count three. Defendant was then tried before a jury and found guilty on counts one and two.

The trial judge sentenced defendant to concurrent six-year terms of incarceration, and required defendant to serve 85% of the sentence in accordance with the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals from the judgment of conviction dated January 13, 2016. For the reasons that follow, we affirm defendant's convictions but remand for resentencing.

I.

We briefly summarize the evidence presented at trial. On February 15, 2013, S.M. went to defendant's apartment on Bond Street in Elizabeth.[1] S.M. and defendant were very good friends. S.M. had arrived at the defendant's apartment sometime in the early afternoon, left for about an hour in the middle of the day

---

[1] We use initials when referring to certain individuals, in order to protect their identities.

and returned. S.M. described defendant's mood as "very heavy" and different than it usually was when they spent time together.

B.C. was defendant's boyfriend and defendant's apartment was his primary residence. According to S.M., defendant was upset with B.C. because he had not come home for Valentine's Day. S.M. testified that defendant's mood got worse throughout the day, and defendant repeatedly said things such as "I'm going to get him," "I'm going to beat his ass," and "I'm going to kick him out." During this time, defendant and S.M. were drinking vodka and wine.

Later in the afternoon, B.C. arrived at the apartment. S.M. testified that she and B.C. were with defendant in defendant's bedroom. Defendant was drinking vodka. She confronted B.C. regarding his whereabouts on Valentine's Day, stating that she had called him and he did not return her call. S.M. testified that defendant was getting increasingly upset. Defendant was pacing back and forth. B.C. began to collect his clothes and looked as though he was preparing to leave the house.

Defendant and S.M. convinced B.C. not to leave. Eventually, defendant and B.C. began to argue, and defendant attempted to leave the house in order to purchase more alcohol. S.M. and B.C. told defendant they had enough alcohol. During the argument, S.M. banged a wine bottle on the dresser in an attempt to get

defendant's attention and get her to "stop acting crazy." S.M. testified, however, that she did not break the bottle.

S.M. and B.C. attempted to convince defendant to remain in the apartment, but defendant continued her attempt to leave. S.M. testified that B.C. stood with his back to the bedroom door in an attempt to prevent defendant from leaving the room. Defendant then began to argue with S.M., shoved her to the ground and knocked S.M.'s wig off. Defendant laughed when this happened.

S.M. testified that after her wig fell off, defendant left the room. She returned several minutes later with an unidentified object and stabbed her. S.M. said that defendant cut her lip, arm, and chest, and that her "whole chest was just . . . split." S.M. did not see the object that defendant used to cut her, but said the object was sharp because it sliced her "like you would slice . . . a piece of meat."

S.M. further testified that she could see "the inside of [her] chest" and then the blood "started gushing everywhere." S.M. ran out of defendant's apartment. According to S.M., defendant screamed, "I didn't mean to do it" and pursued her. S.M. ran to the neighbors to get help, and a neighbor called 9-1-1.

S.M. also stated that although her injury had healed, for two months she had not been able to take a shower or sit up. She showed

the jury her scars from the incident. Photographs of S.M.'s lip, arm, and chest scars also were admitted as evidence.

Sergeant Lawrence Smith, an officer of the Elizabeth Police Department (EPD), testified that on February 15, 2013, he responded to the first-floor apartment of a residence on Bond Street. Smith discussed photographs of the outside and the inside of defendant's apartment. He testified that in the apartment, there was a washing machine in a small laundry-room area. He saw sheets in the washing machine and blood on the agitator.

Smith described his observations of the master bedroom and the photos taken of that room. He said blood was splattered on the floor, and there were no sheets on the bed. He saw a pail with water and two mops. He also saw two corkscrews, one plastic and one metal; rubber gloves; and a pair of scissors under a broken chair.

On cross examination, Smith stated that he did not know whose blood was depicted in the photos. He said blood was not found on the scissors. Smith was shown a photo of a bottle, and he testified that he did not know if the bottle had been knocked down during the struggle. Smith also said he did not see any blood on the corkscrew depicted in one of the photos. He testified that the police did not conclude definitively whether the corkscrew had been used as a weapon in the incident. He also stated that the

photos did not depict any blood on the rubber gloves. In addition, a photo showed an empty beer bottle, but it did not appear to be broken.

After the State rested its case, defendant's attorney moved for a judgment of acquittal on count two, aggravated assault with a deadly weapon. The trial judge denied the motion.

Defendant then presented testimony from Officer Vasilios Papakostas of the EPD. Papakostas stated that on February 15, 2013, he first responded to a residence on South Park Street, where he spoke with S.M. Papakostas then proceeded to defendant's apartment on Bond Street. A black male came to the door and he was removed to the sidewalk, detained and placed in handcuffs. Papakostas then knocked on the door and asked for defendant. She came to the door. Papakostas said defendant appeared emotional. He placed her under arrest and entered the apartment to search for other possible victims.

On cross examination, Papakostas testified that when he spoke to defendant, she said "she wanted to cut me so she got cut." He also testified that when he found S.M. at the residence on South Park Street, he observed her chest. One of S.M.'s breasts had been sliced open and she had lacerations on the tip of her lip and arm. Papakostas said S.M. was bleeding profusely. He called for medical assistance.

Defendant testified that during her argument with S.M., S.M. knocked a cup out of defendant's hand, and the contents of the cup splashed into defendant's face. Defendant pushed S.M. to the ground, causing S.M.'s wig to become displaced. Defendant said she tried to leave the bedroom and drive to the liquor store, but S.M. blocked the doorway. S.M. then grabbed a bottle and tried to swing it over B.C., who was standing between defendant and S.M., in an attempt to hit defendant. B.C. tried to calm S.M. down and pushed her away from defendant as defendant got dressed.

Defendant further testified that she heard "clinking sounds" and saw S.M. trying to crack the bottle. B.C. again positioned himself between defendant and S.M. as S.M. swung the cracked bottle at defendant. Defendant stated that she grabbed S.M. in an attempt to "clinch" her while S.M. was still holding the broken bottle. Defendant then looked down and saw blood on the floor. She followed S.M. when S.M. ran out of the house. Defendant testified that she spoke with S.M. for three minutes in front of defendant's house. Defendant attempted to get S.M. to come back into the house, but S.M. ran up the street.

B.C. also testified for the defense. He stated that he had known defendant for about four years and in February 2013, she was his girlfriend. B.C. said he knew S.M. through defendant. On February 15, 2013, B.C. went to defendant's apartment. S.M. and

defendant were there talking and watching television. At one point, S.M. left the apartment, and she was gone for about an hour or two. When S.M. returned, she was "erratic." According to B.C., S.M. again left the apartment for about an hour. When she returned, they drank wine.

B.C. said S.M. was speaking with defendant in defendant's bedroom, and he was on the bed watching television. At some point, defendant attempted to leave the apartment. S.M. was standing by the bedroom door, and defendant was by the windows. S.M. and defendant were arguing and the argument began to escalate. According to B.C., S.M. became loud and irate. She smacked a bottle out of defendant's hand, and defendant pushed S.M. away. They were yelling at each other, and B.C. stepped between them. He heard S.M. cracking the bottle on the side of the wall and asked S.M. to put the bottle down.

B.C. testified that S.M. attempted to swing the bottle over him, and he stepped out of the way. Defendant came around B.C.'s left side. S.M. and defendant grabbed each other and then let each other go. At that point, B.C. saw blood. S.M. ran out of the house and defendant followed her. Defendant returned to the house and B.C. instructed her to clean the blood by the front door.

As we stated previously, the jury found defendant guilty on count one, second-degree aggravated assault, contrary to <u>N.J.S.A.</u>

2C:12-1b(1); and count two, third-degree aggravated assault, contrary to N.J.S.A. 2C:12-1b(2). The judge later sentenced defendant and entered the judgment of conviction. This appeal followed.

On appeal, defendant raises the following arguments:

POINT I

THE CONVICTIONS FOR AGGRAVATED ASSAULT UNDER N.J.S.A. 2C:12-1B(1) AND (2) MUST BE REVERSED BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THE ESSENTIAL ELEMENTS THAT DEFENDANT EITHER CAUSED OR ATTEMPTED TO CAUSE SERIOUS BODILY INJURY. (Partially Raised Below).

A. The State Failed To Prove Beyond A Reasonable Doubt All of the Elements Of Third-Degree Aggravated Assault With A Deadly Weapon.

B. Counsel Was Ineffective For Failing To Move For A Judgment of Acquittal As To Second-Degree Aggravated Assault, Because The State Had Failed To Prove [Defendant] knowingly, Purposely, Or Recklessly Caused [S.M.'s] Injuries.

POINT II

THE SIX-YEAR SENTENCE FOR THIRD-DEGREE AGGRAVATED ASSAULT IS ILLEGAL.

II.

We turn first to defendant's argument that her conviction for third-degree aggravated assault under N.J.S.A. 2C:12-1b(2) must be reversed. On this charge, the State was required to prove that

defendant: (1) caused bodily injury to another; (2) caused bodily injury by use of a deadly weapon; and (3) acted purposely or knowingly. Ibid.

"Bodily injury" is defined as "physical pain, illness or any impairment of [the] physical condition" of another. N.J.S.A. 2C:11-1a. In addition, "deadly weapon" is defined as

> Any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.
>
> [N.J.S.A. 2C:11-1c.]

After the State rested its case, defendant moved pursuant to Rule 3:18-1 for a judgment of acquittal on the charge of aggravated assault with a deadly weapon. Defendant's attorney argued that the State had not presented any evidence to establish the weapon that defendant allegedly used to assault S.M.

The assistant prosecutor argued that the motion should be denied. The prosecutor asserted that the State was not required to present evidence establishing the specific weapon used. She noted that the victim was not sure what the weapon was. The prosecutor stated that the State had presented evidence showing the injuries that S.M. sustained, and that defense counsel had not

argued these were not serious bodily injuries. She asserted that the State had presented sufficient evidence to show that the injuries had been caused by a weapon capable of producing death or serious bodily injury.

The judge placed his decision on the record. The judge noted that the court must view the evidence in its entirety, and give the State the benefit of all favorable testimony and inferences that could be drawn from the evidence. The court then must determine whether a reasonable jury could find that the State had proven all elements of the offense beyond a reasonable doubt.

The judge noted that S.M. had testified that she was in defendant's apartment when defendant slashed her with a sharp object, causing injuries to her lip, chest, and arm. The judge also noted that the State had introduced photos of S.M.'s injuries.

The judge determined that from the nature of S.M.'s injuries, a jury could infer that the injuries had been caused by an instrumentality that "could be deemed a deadly weapon." The judge stated that the jurors were free to accept the testimony they heard, and should they do so, the evidence would be sufficient to warrant conviction on the charge of aggravated assault with a deadly weapon.

On appeal, defendant argues that the judge erred by denying the motion for acquittal. She contends that the judge mistakenly

A-2653-15T1

found that based on the State's evidence, a reasonable juror could find that the injuries were inflicted with a deadly weapon. She asserts that the State did not produce any weapon, including the bottle and the corkscrew mentioned in the testimony. She also asserts that the manner in which S.M. received the injuries was established only by S.M.'s testimony, which was disputed by defendant's and B.C.'s testimony.

Defendant further argues that even if S.M. suffered the sort of serious bodily injuries she described, her testimony did not provide the jury with sufficient evidence to establish that defendant acted purposely, knowingly, or recklessly. Defendant argues that if the altercation "demonstrated" that she acted with "a measure of indifference" to S.M., that was insufficient to constitute aggravated assault.

Rule 3:18-1 provides that at the close of the State's case or after all evidence has been presented, the trial court shall, on a motion by defendant or on its own initiative, "order the entry of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction." On appeal, we apply the same standard when deciding whether the trial judge should have ordered the entry of a judgment of acquittal. State v. Moffa, 42 N.J. 258, 263 (1964).

In determining whether a motion under Rule 3:18-1 should be granted, the trial judge views the State's evidence "in its entirety, be that evidence direct or circumstantial," and gives the State "the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom." State v. Reyes, 50 N.J. 454, 458-59 (1967). The judge then determines whether "a reasonable jury could find" the defendant guilty "of the charge beyond a reasonable doubt." Ibid.

Under Rule 3:18-1, the court "is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State." State v. Muniz, 150 N.J. Super. 436, 440 (App. Div. 1977), certif. denied, 77 N.J. 473 (1978). "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).

Here, the trial judge correctly found that the State had presented sufficient evidence to allow the jury to find that defendant was guilty beyond a reasonable doubt of aggravated assault with a deadly weapon, contrary to N.J.S.A. 2C:12-1b(2). As we have explained, S.M. testified that on February 15, 2013, defendant had been drinking, was angry and upset with B.C., wanted to leave the apartment to obtain more liquor, and shoved S.M. to the ground in anger.

A-2653-15T1

S.M. testified that she was with defendant and B.C. in defendant's bedroom. Defendant left the room briefly, and when she returned, she stabbed S.M. in the face and cut her arm and breast. S.M. said the injuries caused significant bleeding. Photos of S.M.'s injuries were admitted into evidence. Among other things, the photos showed the blood on the floor of the bedroom.

The State did not present the weapon that defendant allegedly used to injure the victim, but Sergeant Smith testified that two corkscrews and a pair of scissors had been found in the bedroom where the alleged assault took place. The jury could reasonably infer that one of these objects was capable of producing S.M.'s injuries.

In any event, S.M.'s injuries themselves were sufficient to show that she was attacked with an instrument "which in the manner it is used . . . is known to be capable of producing . . . serious bodily injury," even if that instrument was removed, concealed, destroyed, or otherwise was not found. See N.J.S.A. 2C:11-1(c). Whatever the instrument was, S.M. said it sliced through her like a knife through meat.

Thus, based on the evidence presented by the State, the jury could reasonably find that the State had proven beyond a reasonable doubt that defendant assaulted S.M. with a deadly weapon. Furthermore, S.M.'s testimony was sufficient for the jury to find

beyond a reasonable doubt that defendant acted with the requisite mental state. We therefore conclude that the judge did not err by denying defendant's motion for a judgment of acquittal on count two.

## III.

In her brief, defendant argues that she was denied the effective assistance of trial counsel. She contends her trial counsel was deficient because he failed to seek a judgment of acquittal on count one, which charged second-degree aggravated assault, contrary to N.J.S.A. 2C:12-1b(1). Defendant argues that her attorney should have made a Rule 3:18-1 motion and argued that the State failed to prove that she knowingly, purposely, or recklessly caused S.M.'s injuries.

At argument, however, defendant's appellate counsel withdrew this contention, and said he preferred to reserve this claim of ineffective assistance of counsel for a petition for post-conviction relief (PCR). Therefore, we will affirm defendant's conviction on count one, without prejudice to defendant's asserting this claim of ineffective assistance of counsel in a timely-filed PCR petition.

## IV.

Defendant notes that at sentencing, the trial court stated he was sentencing defendant to six years of incarceration, and

requiring that she serve 85% of that sentence, pursuant to NERA. Defendant asserts, however, that the judge did not specify the offense for which the six-year sentence was imposed.

Furthermore, in the judgment of conviction, the judge imposed a six-year prison term on both count one (second-degree aggravated assault), and count two (third-degree aggravated assault). Defendant argues that a six-year sentence on count two is illegal because it is not within the range of sentences for third-degree offenses. N.J.S.A. 2C:43-6a(3) (ordinary term for third-degree offense is between three and five years). Therefore, defendant argues the matter must be remanded for resentencing.

The State agrees the matter must be remanded for resentencing, noting that at sentencing, the judge did not specifically address count two. The State also asserts that on remand, the trial court should address whether counts one and two merge for sentencing purposes.

Although the State argues in its brief that the sentence imposed on count one should be affirmed, and the remand limited to resentencing on count two, at oral argument, the parties agreed and we are convinced that the matter should be remanded for resentencing on both counts. We reach this conclusion because of the lack of specificity in the sentences imposed on the record,

the judgment of conviction which imposed six-year terms on both counts, and the need to address the merger issue.

Accordingly, defendant's convictions on counts one and two are affirmed, and the matter is remanded for resentencing on both counts.

Affirmed in part and remanded to the trial court for resentencing in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2653-15T1